UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| PROFESSIONAL NETWORK CONSULTING SERVICES, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-10774 |
| TRANE U.S., INC. | SECTION M (4) |

### ORDER & REASONS

Before the Court is a motion by defendant Trane U.S., Inc. ("Trane") for summary judgment.[1] Plaintiff Professional Network Consulting Services, LLC ("PNCS") responds in opposition,[2] and Trane replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion finding that PNCS cannot prevail on any of its three alleged causes of action.[4]

**I.     BACKGROUND**

This case concerns a malfunctioning heating, ventilation, and air conditioning system ("HVAC"). PNCS is a limited liability company that operates Vyoone's Restaurant located at 412 Girod Street, New Orleans, Louisiana ("the property").[5] On June 22, 2016, Vyoone Lewis, on PNCS's behalf, signed a lease for the property.[6] The property is owned by 425 Notre Dame, LLC, whose sole member is Susan Brennan.[7] The lease required Brennan to buildout the space

---

[1] R. Doc. 13.
[2] R. Doc. 15.
[3] R. Doc. 21.
[4] Also, before the Court is Trane's motion to strike PNCS's proposed expert witnesses for failure to make timely expert disclosures. R. Doc. 14. That motion is rendered moot by this Order & Reasons granting Trane's motion for summary judgment.
[5] R. Doc. 1-1 at 1.
[6] Id.
[7] R. Doc. 13-3 at 3.

to suit PNCS's needs.[8] To that end, Brennan retained Terrel Fabacher Architects, LLC to prepare architectural drawings, GenBuilt Construction ("GenBuilt") to serve as the general contractor, and ADG New Orleans, LLC ("ADG") to provide mechanical, electrical, and plumbing design services.[9] ADG's principal, Lance Bonadona, a professional engineer, also provided the engineering design for the HVAC system, which was then sent out for bidding by HVAC contractors.[10] Steve's Air Conditioning & Heating, LLC ("Steve's A/C") was the prevailing bidder.[11]

On October 24, 2016, in connection with Steve's A/C's bid, Trane provided a proposal to supply the HVAC equipment for the project.[12] The proposal included Trane's standard terms and conditions, which are expressly incorporated into the sales agreement by the customer's acceptance of the equipment.[13] Importantly, the terms and conditions include a choice-of-law provision stating that New York law applies to the contract, a limited warranty, and a limitation-of-liability clause that prohibits recovery for lost revenue and lost profits.[14]

On March 16, 2017, Trane provided ADG with information regarding the HVAC system's product specifications and performance data.[15] ADG confirmed that the HVAC system proposed by Trane met the requirements set forth in ADG's engineering design, and Trane sold the HVAC equipment to Steve's A/C on March 31, 2017.[16] By November 3, 2017, Steve's A/C had installed the HVAC equipment and Trane had completed the factory startup.[17] Steve's A/C

---

[8] R. Doc. 1-1 at 1.
[9] R. Doc. 13-3 at 3-5.
[10] *Id.* at 4.
[11] R. Doc. 1-1 at 2.
[12] R. Doc. 13-3 at 4.
[13] *Id.*
[14] *Id.* at 4-5.
[15] *Id.* at 5.
[16] *Id.*
[17] *Id.*

submitted its bills to GenBuilt, and Brennan paid all costs associated with the purchase of the HVAC equipment.[18]

Vyoone's Restaurant opened in November 2017.[19] In the spring of 2018, Lewis started noticing that the HVAC system did not operate properly, blowing cold air on cold days and hot air on hot days, instead of the reverse as was intended.[20] Trane representatives visited the property many times to correct the problem, but they were unsuccessful.[21] Eventually, Trane advised Lewis that she had to enter into a service contract to receive continued repair services.[22]

PNCS filed this suit against Trane on March 29, 2019, alleging that the HVAC system continued to malfunction, and that Vyonne's Restaurant has lost customers, and thus revenue, due to the faulty equipment.[23] PNCS alleges that, although it "does not know whether the [s]ystem has design defects, manufacturing defects, or if the [s]ystem is simply wrong for the [p]roperty … Trane knew or should have known that the [s]ystem was defective."[24] PNCS alleges three theories of recovery – negligence, stipulation *pour autrui*, and redhibition – and seeks damages for past lost profits, plus attorney's fees and costs.[25]

PNCS's lost profits claim is for the period of December 31, 2017, to April 2019.[26] In April 2019, Lewis hired Cisco's Heating & Air Conditioning, Inc. ("Cisco's Heating") to repair the HVAC system.[27] The repairs were successful, and Brennan paid Cisco's Heating's bill.[28]

---

[18] *Id.* at 5-6.
[19] R. Doc. 1-1 at 2.
[20] *Id.*
[21] *Id.* at 2-3.
[22] *Id.* at 3.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 3-6; R. Doc. 13-2 at 6.
[26] R. Doc. 13-2 at 6.
[27] *Id.* (which mistakenly refers to Cisco's Heating as "Sysco," a phonetic spelling).
[28] *Id.*

## II. PENDING MOTION

Trane moves for summary judgment arguing that PNCS cannot prevail on any of its three alleged causes of action: negligence, stipulation *pour autrui*, or redhibition. Trane argues that PNCS's negligence claim is barred by the economic loss doctrine because PNCS is seeking lost profits (that is, economic damages) caused by the operational problems with the HVAC system itself and PNCS's inability to use it.[29] As to stipulation *pour autrui*, Trane argues that the only contract it entered into was with Steve's A/C and that this contract incorporated Trane's standard terms and conditions.[30] The terms and conditions specify that New York law applies to the contract and provide a valid limitation-of-liability clause that precludes recovery for business interruption, including specifically, lost profits.[31] Trane reasons that PNCS is precluded from recovering lost profits because its rights as an alleged third-party beneficiary can be no greater than the rights of the direct party to the contract, Steve's A/C.[32] Finally, Trane argues that PNCS cannot maintain a redhibition cause of action because PNCS was not the purchaser of the product.[33]

In opposition, PNCS argues that, although it did not plead a claim under the Louisiana Products Liability Act ("LPLA"), Louisiana law applies to this entire action because it is a products lability action and Louisiana Civil Code article 3545, the choice-of-law provision for the LPLA, dictates the application of Louisiana law.[34] PNCS also argues that the limitation-of-liability clause in Trane's terms and conditions is unenforceable because the liability would be

---

[29] *Id.* at 12-13. Trane also argues that PNCS's negligence claim fails because it is not supported by expert testimony. *Id.* at 13-14. As a result of the Court's application of the economic loss doctrine to bar PNCS's negligence claim, it is unnecessary for this Court to reach the issue regarding expert testimony.
[30] *Id.* at 8-11.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 11-12.
[34] R. Doc. 15 at 8-9.

too minimal as compared to the damage, and that even if the clause is enforceable, PNCS is entitled to recover at least the amount Steve's A/C paid for the system.[35] Further, PNCS argues that the economic loss doctrine does not apply because PNCS seeks damages for the HVAC system's rendering the building unusable.[36]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the

---

[35] *Id.* at 9-10.
[36] *Id.* at 11-12. PNCS also argues that this Court should delay consideration of Trane's motion for summary judgment because discovery is not complete. *Id.* at 8. Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." To obtain relief under Rule 56(d), the party opposing summary judgment must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotation and citation omitted). PNCS fails to include an affidavit or explain in any way exactly what it hopes to obtain from discovery and how those facts would affect the pending motion. Rather, PNCS simply states that outstanding discovery and at least one deposition may provide unspecified pertinent information. This statement is insufficient to carry PNCS's burden under Rule 56(d). Therefore, the Court denies PNCS's Rule 56(d) request as inadequate.

moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625

6

(5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Negligence

To prevail on a negligence claim under Louisiana law, the plaintiff must prove: (1) the defendant had a duty to conform its conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element). *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006) (citing *Fowler v. Roberts*, 556 So. 2d 1, 4 (La. 1989)). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 326 (La. 1994).

In this case, PNCS alleges that Trane breached a duty of care owed to PNCS in the design, manufacture, and installation of the HVAC system.[37] PNCS alleges that the HVAC

---

[37] R. Doc. 1-1 at 4. PNCS's claim for negligent design, manufacture, or installation is also precluded by the exclusivity provision of the LPLA. *See Carter v. Louisville Ladder Grp., LLC*, 2005 WL 3088613, at *7 (W.D. La. Nov. 17, 2005) ("The LPLA bars all causes of action for general negligence brought against product manufacturers."). The LPLA prescribes "the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Yet, PNCS has failed to plead the elements of any of the four theories of

7

system never worked properly which resulted in PNCS's losing profits.[38] PNCS does not allege that the HVAC system damaged any person or any property belonging to PNCS.

"In most jurisdictions, the 'economic-loss rule' bars recovery in tort when a party suffers economic loss unaccompanied by harm to his own person or property." *Wiltz v. Bayer CropSci., Ltd. P'ship*, 645 F.3d 690, 695 (5th Cir. 2011) (citations omitted). In *Chevron USA, Inc. v. Aker Maritime, Inc.*, the Fifth Circuit explained the economic loss rule as follows:

> As explained by the Supreme Court, the economic loss doctrine prevents a plaintiff from recovering for damage to the product itself or losses that arise from the plaintiff's inability to use the product. The purpose of the doctrine is to maintain the traditional distinction between contract and tort. When a product damages other property or causes personal injury, the action is for an unsafe product in tort. If the damage is instead to the product itself or a loss of profits, the action properly is in warranty or contract, for responsibility for those damages can more reasonably be the subject of negotiations.

604 F.3d 888, 900-01 (5th Cir. 2010) (citations omitted).

PNCS's tort claim against Trane seeking to recover lost profits resulting from the damaged product itself and PNCS's inability to use the product falls squarely under the economic loss rule, and it is thus barred. Although PNCS argues that the faulty HVAC system rendered the building unusable, its claim is not for remediation to the building, but rather for lost profits, which is prohibited by the economic loss doctrine. As such, Trane's motion for summary judgment is GRANTED as to PNCS's negligence claim, which is DISMISSED WITH PREJUDICE.

---

liability under the LPLA. *Id.* 9:2800.54. Nor has PNCS come forward with any summary-judgment evidence to support an LPLA claim.
   [38] R. Doc. 1-1 at 4.

### C. Stipulation *pour artrui* or third-party beneficiary contract

The parties dispute whether Louisiana or New York law applies to PNCS's claim for stipulation *pour artrui* (Louisiana) or third-party beneficiary contract (New York) concerning Trane's contract with Steve's A/C. Because PNCS did not provide an adequate choice-of-law analysis and PNCS's claim fails under both Louisiana and New York law, the Court will not resolve the choice-of-law issue.

Under Louisiana law, a contract for the benefit of a third party is called a stipulation *pour autrui*. *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 939 So. 2d 1206, 1211-12 (La. 2006). A stipulation *pour autrui* exists if (1) the contract manifests a clear intention to benefit the third party; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the parties. *Id*. at 1212. "A stipulation *pour autrui* is never presumed." *Id.* The party claiming the benefit bears the burden of proof, which it cannot meet, unless the contract manifests a clear intention to benefit the third party. *Id.* Further, Louisiana law provides that "[t]he promisor may raise against the beneficiary such defenses based on the contract as he may have raised against the stipulator." La. Civ. Code art. 1982. Indeed, the rights of the third-party beneficiary under the contract cannot exceed those of the contracting parties. *Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 318 (5th Cir. 1991).

New York law similarly provides that:

> A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost.

*Nanomedicon, LLC v. Research Found. of State Univ. of N.Y.*, 112 A.D.3d 594, 596 (N.Y. Sup. Ct. 2013) (quotation marks and citations omitted). Moreover, a third-party beneficiary "has no greater rights under the contract than any of the contracting parties." *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 39 Misc. 3d 1220(A) (N.Y. Sup. Ct. 2013); *see also BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 687 (2d Cir. 1993).

Here, there is doubt whether PNCS has carried its burden of establishing that it was a third-party beneficiary of the contract between Trane and Steve's A/C. PNCS points to nothing in the contract that manifests an intent that it benefit therefrom. Rather, as a lessee of the property that did not itself pay for the renovations, PNCS received only an incidental benefit of the contract. Moreover, even if PNCS were a third-party beneficiary, it has no greater rights than the contracting party, Steve's A/C, and the contract specifically excludes recovery for incidental, indirect, and consequential damages, including lost profits, which constitutes PNCS's sole claim for damages. Because PNCS cannot maintain its third-party beneficiary claim under either New York or Louisiana law, Trane's motion for summary judgment is GRANTED as to PNCS's stipulation *pour autrui* claim, and it is DISMISSED WITH PREJUDICE.

**D. Redhibition**

Under Louisiana law, sellers impliedly warrant buyers against redhibitory defects, or vices, in the thing sold. La. Civ. Code art. 2520. A seller is liable to a buyer for a redhibitory defect when: (1) the seller sold a thing that is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that had the reasonable buyer known of the defect, he or she would not have purchased it; (2) the thing sold contained a non-apparent defect at the time of sale; and (3) the seller was afforded an opportunity to repair the defect. *See, e.g., Hoffman v. B&G, Inc.*, 215 So. 3d 273, 277-78 (La. App. 2017). An "action in redhibition may be brought

only by a buyer against a seller of property … [and] the existence of a sale to the buyer must be proven." *Franks v. Royal Oldsmobile Co.*, 605 So. 2d 633, 635 (La. App. 1992) (citations omitted).

Here, it is undisputed that PNCS was not the buyer of the Trane HVAC system. Thus, PNCS cannot bring an action in redhibition against Trane. Accordingly, Trane's motion for summary judgment is GRANTED as to PNCS's redhibition claim, which is DISMISSED WITH PREJUDICE.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Trane's motion for summary judgment (R. Doc. 13) is GRANTED, and PNCS's claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Trane's motion to strike PNCS's expert witnesses (R. Doc. 14) is DISMISSED as moot.

New Orleans, Louisiana, this 30th day of January, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE